Sánchez Martínez, Juez Ponente
*990 TEXTO COMPLETO DE LA SENTENCIA
Este caso plantea la interrogante de si esta Sala -o panel- puede cambiar la decisión previa de otra Sala, en este mismo caso, como una excepción a la doctrina de la ley del caso. La apelada, Asociación de Residentes de la Urbanización Las Colinas, Inc., aduce que los residentes apelantes plantean exactamente lo mismo que otra Sala de este Tribunal ya adjudicó de forma adversa a ellos. Por los fundamentos que prosiguen, concluimos que, aunque la sentencia anterior de la otra Sala pudiera ser errónea, no está presente el elemento adicional requerido, cual es, que el error cometido hubiese ocasionado una injusticia grave.
Treinta residentes de la Urbanización Las Colinas presentaron una petición de injunction contra la Asociación de Residentes de dicha urbanización, su presidente -señor Emiliano Arroyo-, la esposa -María Isabel Ortiz-, y la sociedad de bienes gananciales compuesta por ambos. Solicitaron la entrega de las tarjetas del sistema de control de acceso establecido en la urbanización; que se revisara el reglamento de la Asociación sobre el control de acceso; que se desistiera de continuar realizando cualquier acto ilegal contra los promoventes; y que.se revisara la legalidad de la aprobación del control de acceso allí establecido y se declarara su inconstitucionalidad.
La Asociación de Residentes y los Arroyo-Ortiz negaron las aseveraciones esenciales de la demanda y formularon una reconvención en la que alegaron, entre otras cosas, que la Asociación le reclamó a los demandantes el' pago de las cuotas de mantenimiento que adeudaban. Posteriormente, la Asociación de Residentes y los Arroyo-Ortiz presentaron una moción de sentencia sumaria. Solicitaron que se desestimara la petición de injunction, que se estimara su reconvención y que se condenara a los demandantes a pagar las cuotas de mantenimiento del sistema de control de acceso de la urbanización que adeudaban. Adujeron que su obligación partía del hecho de que los demandantes-reconvenidos no eran opositores del sistema, conforme a la Sec. 15 de la Ley de control del tráfico de vehículos de motor y uso público en ciertas calles, Ley 21 de 20 de mayo de 1987, 23 L.P.R.A. sec. 64g.
Los residentes reconvenidos se opusieron a esta moción. Se basaron en que no estaban obligados a pagar las cuotas de mantenimiento del sistema de control de acceso, pues, aunque no eran opositores del sistema, no se habían obligado a pagarlas.
El Tribunal de Primera Instancia desestimó la reclamación de cobro de dinero porque los residentes reconvenidos, aun cuando manifestaron, mediante declaración jurada, que estaban de acuerdo con la adopción del sistema, no se comprometieron a aportar económicamente para su funcionamiento. Finalmente, pautó la celebración del juicio para que se dilucidara la reclamación de daños pendiente contra la Asociación y los Arroyo-Ortiz.
Inconformes, la Asociación y los Arroyo-Ortiz acudieron ante nos mediante un recurso de certiorari al que se le asignó el número KLCE-98-00172. Uno de los señalamientos de error -el segundo-¡ fue que el Tribunal de Primera Instancia se había equivocado al resolver que el consentimiento expresado en las declaraciones juradas que los residentes demandantes habían otorgado para autorizar la implantación de un sistema de control de acceso en la Urb. Las Colinas, no constituía un compromiso de pagar las cuotas de mantenimiento, conforme a lo resuelto por el Tribunal Supremo en Caquías v. Asoc. Res. Mansiones Río Piedras, 134 D.P.R. 181 (1993).
El 14 de abril de 1999, este Tribunal -actuando a través de la Sala compuesta por los Jueces Arbona Lago, Salas Soler y Negroni Cintrón (Ponente)-, expidió el auto y dictó sentencia en la que revocó la resolución recurrida. Sostuvo, apoyándose en Caquías, que la Ley 21 de 1987, según enmendada por la Ley 156 de 10 de agosto de 1988, “permitía que la autorización inicial para establecer el sistema de control de acceso obligara, *991 por sí sola, al propietario que la suscribiera a cumplir con todas las responsabilidades que esto imponía, incluyendo su sostenimiento económico, siempre y cuando el sistema se hubiera implantado de conformidad con los términos y las condiciones contenidas en dicha autorización” y que, al resolver lo contrario, el tribunal a quo “interpretó equivocadamente” la norma expuesta en Caquías.
Dicha Sala sostuvo, además, en su sentencia que Caquías “ratificó la voluntad legislativa de que los residentes o propietarios que se opusieran inicialmente al establecimiento del sistema de control de acceso no tenían obligación alguna de aportar para el sostenimiento económico del sistema” y que “debido a su oposición inicial, éstos tienen que, entonces, otorgar un consentimiento escrito posterior comprometiéndose a sufragar el mantenimiento del sistema, para quedar obligados, a partir de la fecha en que suscriban el acuerdo, a mantener económicamente el sistema de control de acceso. Ello así, los residentes o propietarios que hayan suscrito autorizaciones o hayan brindado su consentimiento para establecer el sistema de acceso controlado después de [10 de agosto de 1988, fecha en que se aprobó la Ley 156, que enmendó la Ley 21,] quedaron y están obligados y comprometidos a apoyar económicamente el sistema propuesto”. La sentencia recalcó que “[sjolamente los propietarios que se hubieran opuesto al establecimiento del sistema de control de acceso están liberados de esa obligación, salvo que, alterando su objeción inicial, posteriormente se comprometan por escrito a así hacerlo”. Apéndice, 13-14.
A partir de este razonamiento, la sentencia de la ilustrada Sala de este Tribunal concluyó que, como los residentes reconvenidos suscribieron las autorizaciones juradas entre marzo de 1987 y febrero de 1992, es decir, después de entrar en vigor la Ley 156, y ellos no eran opositores al establecimiento del sistema, estaban obligados al pago de las cuotas de mantenimiento.
Devuelto el caso al Tribunal de Primera Instancia -y firme ya la sentencia por no haberse recurrido al Tribunal Supremo-, la Asociación de Residentes presentó una moción de sentencia sumaria en la que acreditó el monto adeudado por cada uno de los residentes reconvenidos. Estos se opusieron a base de que la interpretación que el Tribunal de Circuito de Apelaciones hizo de Caquías es “totalmente errónea en derecho” y “no debe ser seguida” por el Tribunal de Primera Instancia. Apéndice, 108. El escrito de oposición añade: “Cualquier expresión del Tribunal de Circuito de Apelaciones que pretenda un esquema jurídico distinto y errado debe ser superado y obviado en aras de lograr que este pleito se resuelva conforme a derecho y de una manera justiciera. Este Honorable Tribunal [de Primera Instancia] está dotado de la capacidad y el poder de discernir y optar por el derecho correcto, no empece el mandato o las disposiciones del foro apelativo”. Apéndice, 110-111.
El Tribunal de Primera Instancia no acogió el planteamiento y aplicó la ley del caso. Dictó sentencia parcial en la que condenó a 19 de los 30 residentes reconvenidos al pago de las cuotas de mantenimiento adeudadas. Las deudas fluctuaron entre $261 y $2,822.
Inconformes con tal dictamen, los residentes reconvenidos apelan. Le imputan tres errores al tribunal sentenciador que pueden resumirse así: que la interpretación de la Ley de control del tráfico de vehículos de motor y uso público en ciertas calles, que hizo el Tribunal de Circuito de Apelaciones en la sentencia del 14 de abril de 1999 en el anterior recurso KLCE-98-00172, es errónea y, por ende, cometió error el Tribunal de Primera Instancia al acatarla. Nos exhortan a que remediemos tal injusticia y no apliquemos la doctrina de la ley del caso.
La doctrina de la ley del caso establece que “las determinaciones de un tribunal apelativo constituyen ‘la ley del caso ’ en todas aquellas cuestiones consideradas y decididas y generalmente obligan tanto al tribunal de [primera] instancia como al que las dictó si el caso vuelve a su consideración”. Srio. del Trabajo v. Tribunal Superior, 95 D.P.R. 136, 140 (1967). Sin embargo, esta doctrina “no es férrea ni de aplicación absoluta”. Noriega v. Gobernador, 130 D.P.R. 919, 931 (1992). En Puerto Rico rige el Código Civil y, por lo tanto, no existe fundamento válido para la aplicación al modo angloamericano de la ley del caso. Núñez Borges v. *992 Pauneto Rivera, 130 D.P.R. 749, 754-755 (1992). “También se reconoce que si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa.” Don Quixote Hotel v. Tribunal Superior, 100 D.P. R. 19, 29-30 (1971).
Por lo tanto, si pudiésemos concluir que en este caso la primera Sala o panel de este Tribunal: (1) hizo una determinación errónea, y (2) que la misma puede causar una grave injusticia, entonces estamos autorizados a hacer una excepción a la doctrina de la ley del caso y aplicar la regla correcta, es decir, a ignorar lo resuelto por la otra Sala y resolver lo que sea correcto en derecho.
Analicemos la primera cuestión: ¿Fue errónea la decisión de la Sala germana en el anterior recurso KLCE-98-00172? Opinamos que sí.
La Ley de control del tráfico de vehículos de motor y uso público en ciertas calles, Ley 21 de 20 de mayo de 1987, 23 L.P.R.A. see. 64 et seq., autorizó a la Junta de Planificación de Puerto Rico a conceder permisos a los residentes de urbanizaciones y comunidades para controlar el acceso vehicular y el uso público de las calles de sus vecindarios. La Ley 21 estableció cuatro requisitos: (1) que los residentes tuviesen un Consejo, Junta o Asociación de Residentes debidamente organizada y registrada en el Departamento de Estado como una institución sin fines de lucro; (2) que en la comunidad no existiese ningún edificio gubernamental (a excepción de escuelas, parques recreativos o centros comunales); (3) que la solicitud de control de acceso se adoptara por % partes de los propietarios de las viviendas allí situadas; y (4) que la comunidad se comprometiera y presentara garantías de que asumiría los gastos de operación y mantenimiento del sistema del control de acceso.
La Ley 21 nada dispuso en cuanto a quiénes estaban obligados a sufragar los gastos de operación y mantenimiento del sistema, pero le impuso a la Junta de Planificación la obligación de adoptar un reglamento para la implantación de la ley.
Sin que se hubiese aprobado aún el reglamento, la Asamblea Legislativa aprobó la Ley 156 de 10 de agosto de 1988, que enmendó la Ley 21. El reglamento se adoptó después, el 20 de enero de 1989. Véase, Reglamento de Control de Tránsito y Uso Público de Calles Locales, Reglamento de Planificación 20.
La Ley 156 transfirió de la Junta de Planificación a los municipios la autoridad y procedimiento para conceder los permisos para los controles de acceso. También estableció un sistema de cuotas mediante el cual los residentes financiarían el sistema de control de acceso. A tales fines, estableció un mecanismo para inscribir como gravamen en el Registro de la Propiedad la obligación -voluntariamente asumida- de pagar cuotas de parte de aquellos propietarios que lo hubieran consentido por escrito. Asimismo, dispuso que “fijos propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso no estarán obligados al pago de cuotas para el establecimiento, operación, mantenimiento o remoción de dicho sistema excepto en aquellos casos en que se comprometan a dichos pagos mediante contrato escrito”. Sec. 15, 23 L.P. R.A. Sec. 64g.
La Ley 156 no dispuso expresamente que los propietarios que hubiesen autorizado el establecimiento del sistema de control de acceso estarían obligados al pago de las cuotas. Esa era la ley y ésa fue una de las cuestiones que tuvo que resolver el Tribunal Supremo en Caquías.
En Caquías varios vecinos que habían autorizado a la Asociación de Residentes a gestionar el permiso para el establecimiento del sistema de control de acceso en su urbanización, una vez aprobado el sistema, rehusaron firmar el contrato que los hubiese obligado expresamente a pagar las cuotas fijadas por la Asociación y exigieron obtener gratuitamente los medios para operar el sistema. La Asociación se opuso y el pleito quedó trabado. El Tribunal de Primera Instancia resolvió la cuestión a favor de los residentes recalcitrantes.
*993 El Tribunal Supremo resolvió que, de acuerdo a la Ley 21, según enmendada por la Ley 156, sólo había dos formas de obligar a un residente a pagar la cuota para el mantenimiento del sistema de control de acceso: (1) que dicho sistema constara debidamente inscrito en el Registro de la Propiedad, o (2) que el residente se hubiera comprometido al pago de la misma mediante contrato escrito. Como en ese caso no se daba ni lo uno ni lo otro, el Tribunal Supremo resolvió que la ley nada disponía en cuanto a que la autorización inicial obligaba a los suscribientes a sufragar los gastos del sistema, ni que tenía que ser revocada expresamente para evitar ese efecto. Sostuvo que los "residentes opositores se limitaron a firmar la autorización para que la Asociación realizara gestiones para limitar la entrada y salida de personas extrañas a su comunidad”, pero que dicha “autorización no tuvo el efecto de comprometerlos a sufragar el mantenimiento y operación del sistema”. Caquías, 134 D.P.R._, a la pág. 213.
El Tribunal Supremo añadió que “la autorización aludida no pasó de ser un consentimiento para que la Asociación realizara «gestiones» ” y en nada aludió a un compromiso económico. El Alto Foro decidió:
"[N]o podemos perder de vista que, en aquel entonces, dicha ley [la Ley 21 según enmendaba por la Ley 156] no disponía que la autorización obligaba a sufragar los gastos de operación y mantenimiento del sistema, ni exigía que el residente revocara expresamente su autorización para evitar ese efecto. Por tanto, y visto que el documento de autorización no contenía ningún compromiso en contrario, debemos tomar su negativa a firmar el contrato de mantenimiento como una revocación implícita de su autorización inicial."
Concluimos, por tanto, que los residentes opositores no tienen obligación alguna de sufragar la operación del sistema de control de acceso.
Al igual que en Caquías, en el caso de autos, los residentes aquí demandantes y reconvenidos firmaron las autorizaciones -mediante declaraciones juradas- para gestionar la solicitud del sistema de control de acceso, pero dichos documentos no contenían ningún compromiso de pago. Como la ley aplicable.es la Ley 21, según enmendada por la Ley 156, y, sobre todo, conforme a la interpretación que le brindó el Tribunal Supremo en Caquías, no era necesario que el residente revocara expresamente su autorización para evitar ese efecto. Los residentes aquí demandantes y reconvenidos no estaban obligados a contribuir al sostenimiento del sistema de control de acceso en la urbanización Las Colinas.
Por consiguiente, y dicho con profundo respeto, la sentencia de 14 de abril de 1999, que emitió este Tribunal -actuando a través de otra Sala-, nos parece errónea. No porque sea irrazonable, sino porque le niega reconocimiento a un precedente claro sentado por el Tribunal Supremo de Puerto Rico. Según hemos visto de la interpretación autoritativa del Tribunal Supremo, no es correcto que la Ley 21 de 1987, según enmendada por la Ley 156 de 1988, “permitía que la autorización inicial para establecer el sistema de control de acceso obligara, por sí sola, al propietario que la suscribiera a cumplir con todas las responsabilidades que esto imponía, incluyendo su sostenimiento económico, siempre y cuando el sistema se hubiera implantado de conformidad con los términos y las condiciones contenidas en dicha autorización” y que, al resolver lo contrario, el tribunal a quo “interpretó equivocadamente” la norma expuesta en Caquías. Todo lo contrario, es cierto. El Tribunal de Primera Instancia interpretó correctamente a Caquías.
Nos parece igualmente erróneo sostener que “los residentes o propietarios que hayan suscrito autorizaciones o hayan brindado su consentimiento para establecer el sistema de acceso controlado después de [10 de agosto de 1988, fecha en que se aprobó la Ley 156, que enmendó la Ley 21,] quedaron y están obligados y comprometidos a apoyar económicamente el sistema propuesto”. Al amparo de Caquías, tanto los propietarios que se hubieran opuesto al establecimiento del sistema de control de acceso, como los que únicamente dieron un consentimiento inicial para que éste se gestionara, estaban liberados de la obligación de pagar las cuotas de mantenimiento.
Para aclarar cuándo es que los residentes vienen obligados a pagar por el sistema de control de acceso, se *994 aprobó la Ley 22 de 16 de julio de 1992, que enmendó la See. 2 de la Ley 21, 23 L.P.R.A. see. 64a, a los efectos de que:

"Una autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad, prestada voluntariamente por un propietario mayor de edad y en representación de una vivienda, obligará al propietario a cumplir con lo dispuesto en la [Sec. 10, 23 L.P.R.A. sec. 64d-3] y estará en pleno efecto y vigor mientras no se emita un documento escrito que claramente revoque la autorización prestada con fecha anterior. Una revocación de autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad, será válida únicamente si se presenta en cualquier momento hasta la fecha de celebración de la primera vista pública. Luego de esta fecha aplicará lo dispuesto en la [Sec. 10, 23 L.P.R. A. sec. 64d-3[. Aquellas personas que favorezcan la implantación del sistema deberán hacerlo expresamente y por escrito en el momento en que se lleve a cabo la gestión para obtener de los propietarios las autorizaciones necesarias para solicitar el permiso de control de acceso."

Sin embargo, la Ley 22 no es aplicable al caso de autos, debido a que los hechos ocurrieron antes de la aprobación de dicha ley. De haber ocurrido los hechos después de aprobarse la Ley 22, nuestra sentencia anterior habría sido correcta.
Resuelto que la sentencia de 14 de abril de 1999, que emitió este Tribunal -actuando a través de otra Sala-, nos parece errónea, debemos decidir si la misma constituye una “grave injusticia” que justifique que la descartemos como la ley de este caso y que apliquemos la norma jurídica correcta. No es suficiente, por lo tanto, ni que la sentencia anterior sea errónea ni que resulte en “alguna” injusticia. Debe tratarse, pues, de una injusticia grave.
La realidad es que los residentes apelantes debieron acudir en certiorari al Tribunal Supremo y solicitar la revisión de nuestra sentencia anterior. No lo hicieron y tampoco han aducido la razón para no haberlo hecho. Eso le habría dado a la rama judicial la oportunidad de hacer un dictamen correcto.
No obstante, la “grave” injusticia de la que se quejan los residentes apelantes, es que no han quedado satisfechos en su expectativa de lucrar un servicio que les protege y brinda seguridad física y emocional, y con el cual estuvieron de acuerdo desde el principio, a sabiendas de que el mismo no podría operar gratuitamente. Nuestra sentencia anterior meramente les hace extensiva una obligación que, a partir de 1992 (con la Ley 22), tienen necesariamente todos los residentes que hubiesen autorizado por escrito el sistema de control de acceso y no hubiesen revocado tal autorización expresa y oportunamente. No se le ha impuesto una carga que nadie más en el país tiene que sobrellevar ni se les exige aportar al sufragio de un servicio que no reciben. Más que víctimas de una “grave” injusticia, los residentes apelantes pasarán a ser ahora los buenos vecinos que, con espíritu de solidaridad y altruismo, ayudarán al resto de los miembros de la comunidad en que viven a sufragar el costo de unos beneficios que también reciben.
Con estos antecedentes, y no estando presente el segundo elemento indispensable para la exención de los efectos de la doctrina de la ley del caso (esto es, la “gravedad’ de la injusticia cometida), se confirma la sentencia apelada.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Circuito Apelaciones.
Aida Ileana Oquendo Graulau
Secretaria del Tribunal de Circuito Apelaciones